IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J.C.B.[1],

Plaintiff,

v. Case No. 26-1016-JWB

FRANK BISIGNANO, Commissioner of Social Security,

Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits. The matter is fully briefed and is ripe for decision. (Docs. 9, 13.)[2] For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

## I. Standard of Review

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Id.*

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Nor will

---

[1] Plaintiff's initials are used to protect his privacy interests.
[2] Plaintiff did not file a reply brief and the time for doing so has lapsed.

the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); 20 C.F.R. § 416.920 (2026). At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Id*. At step two, the agency will find non-disability unless the claimant shows that he has severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv). The RFC represents the most that the claimant can still do in a work setting despite his impairments. *See Cooksey v. Colvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 416.920(e)–(g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that he cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

## II. Background and Procedural History

Plaintiff applied for disability insurance benefits, claiming that he became unable to work due to a disabling condition on September 19, 2019. (Tr. at 170.) His claim was initially denied on September 21, 2023, and again upon reconsideration on September 5, 2024, (Tr. at 61–71, 72–83), prompting him to request a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 107–08.) Plaintiff testified at a video hearing on January 30, 2025, before ALJ Pearline Hardy. On February 10, 2025, the ALJ issued a written decision unfavorable to Plaintiff. (Tr. at 14–34.)

At step one, the ALJ found Plaintiff had not been engaged in substantial gainful activity since the alleged onset date. (Tr. at 19.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: generalized anxiety disorder; major depressive disorder; panic disorder; and obsessive-compulsive disorder. (*Id.*) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (Tr. at 20–21.)

The ALJ next determined that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff would be off task 10% of the time during an 8-hour workday due to anxiety and would be absent, arrive late, or leave early 1 day per month on a consistent basis due to mental health symptoms.[3] (Tr. at 21.)

At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. at 26.) At step five, the ALJ found that, given Plaintiff's age, education, work experience, and residual functional capacity, there exist jobs in significant numbers in the national economy that Plaintiff can perform. (Tr. at 27.)

---

[3] The ALJ's RFC assessment is not limited to Plaintiff's time off task; the ALJ also identified several other limitations comprising that assessment. (Tr. at 21.) Because Plaintiff doesn't challenge the other components of the RFC assessment, any issue with those components is waived. *See Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived.").

Plaintiff timely filed a request for review with the Appeals Council on February 27, 2025, (Tr. at 163–64), which was denied on November 19, 2025. (Tr. at 1–6.) Plaintiff then filed this action on January 21, 2026. (Doc. 1.)

**III. Analysis**

Plaintiff argues that the ALJ erred by not articulating a logical bridge between the assessed RFC and the evidence. (Doc. 9 at 10.) He asserts that the ALJ did not comply with Social Security Ruling ("SSR") 96-8p, which states that an "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *7. As Plaintiff sees it, the record lacks evidence stating that he would be off task 10% of the time each workday, and the ALJ didn't explain how she made this assessment. (Doc. 9 at 11.) In response, the Commissioner argues that Plaintiff's contentions show neither legal error nor a lack of substantial evidentiary support for the ALJ's RFC assessment. (Doc. 13 at 3.) The court agrees with the Commissioner.

To support her RFC assessment, the ALJ pointed to (1) a March 8, 2021, tele-med appointment during which Plaintiff alleged having issues with focus and concentration; (2) a July 13, 2021, psychotherapy session during which the Plaintiff alleged depression and lack of motivation and appeared distractible; (3) a January 5, 2022, telehealth psychotherapy visit during which Plaintiff was found distractible; (4) an October 18, 2023, visit with VALEO Behavioral Health during which Plaintiff's cognition was found distractible; (5) an August 26, 2024, consultative exam during which Plaintiff reported bathing only once a week and struggling with household tasks due to lack of motivation, but was found not distractible; (6) hearing testimony reflecting that Plaintiff was terminated for lack of performance due to his inability to keep up with demand; and (7) a Kansas psychiatric consultant's opinion that Plaintiff had moderate functional

limits, including moderate limitations in concentration, persistence, and maintaining pace. (Tr. at 22–25.) Further, the ALJ noted that Plaintiff's mental conditions only resulted in moderate functional limitations and that he had no "marked or extreme limitations." (*Id.* at 25.) The medical records also show that Plaintiff has sought ongoing treatment and medications for his conditions; however, Plaintiff's conditions have not resulted in inpatient hospital stays nor has he presented to the emergency room for any mental complaints. (*Id.* at 24.) Although Plaintiff's records show that his mood has been depressed and anxious, the mental status exams were otherwise not remarkable. (*Id.* at 23–26.)

Two of the ALJ's findings are especially relevant. First, the ALJ acknowledged two medical opinions from a University of Kansas nurse practitioner who opined in December 2022 that Plaintiff would be off task 50% of the time and in December 2024 that he would be off task 20% of the time. (Tr. at 26.) The ALJ found those determinations unpersuasive because Plaintiff's treatment records "do not show such extreme limitations." (*Id.*) Second, the ALJ highlighted Kansas psychiatric reports reflecting that Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was "[n]ot significantly limited." (Tr. at 68, 80.) The ALJ found those reports "partially persuasive" because "ongoing issues with depressed mood, lack of motivation, and limits in concentration are more consistent with all moderate limitations." (Tr. at 25.)

Given this competing evidence, the ALJ "arrived at an assessment between the . . . medical opinions without fully embracing . . . one." *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016). The court discerns no error in the ALJ's doing so. *See id.* Indeed, the record, which the ALJ

"thoroughly reviewed," *Hendron*, 767 F.3d at 954, supports the middle-ground position that Plaintiff would be off task somewhere between 0% to 20% of the time. (Tr. at 22–25.)

The fact that the record lacks medical evidence quantifying off-task behavior at exactly 10% doesn't rebut this conclusion. "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). As mentioned, the court can follow how the ALJ arrived at an assessment of 10% time off task—faced with conflicting opinions that Plaintiff's ability to complete a normal workday and workweek without interruptions was not significantly limited and that Plaintiff would be off task 20% of the time, the ALJ chose a middle ground position based on other evidence reflecting that Plaintiff had moderate limitations but not marked limitations in that area. (Tr. at 25) ("The claimant's mental conditions result in limitations as noted in the [RFC], but the conditions do not limit all work.") The record supports that determination. *See Lax*, 489 F.3d at 1084.

To avoid this conclusion, Plaintiff asserts that "the ALJ's assessed RFC coincidentally aligns exactly with the vocational expert's assessment of the maximum frequency of workplace interruptions that would be tolerated by employers." (Doc. 9 at 12.) (*See* Tr. at 57 (the vocational expert opining that, "in regard to off task, anything more than 10% would be work preclusive").) Plaintiff seems to be arguing that the ALJ acted improperly by assessing an RFC based on the vocational expert's opinion. But, as far as the court can tell, the ALJ "did not use the vocational expert testimony to supply a new, ex post facto legal or factual basis for the mental limitations"; she "considered the psychological evidence, both for and against [Plaintiff], and crafted mental limitations the [c]ourt is able to meaningfully assess." *Duran v. O'Malley*, No. 23-2, 2024 WL 1329435, at *10 (D.N.M. Mar. 28, 2024). Hence, the court discerns no impropriety. *See Harline*

*v. Drug Enf't Admin.*, 148 F.3d 1199, 1204 (10th Cir. 1998) (holding that an ALJ "enjoys a presumption of honesty and integrity").

Finally, Plaintiff argues that, in finding the University of Kansas nurse practitioner opinions unpersuasive, the ALJ "ignored the flood of abnormal mental status examination findings documented within the record." (Doc. 9 at 12 n.2.) The Commissioner responds that this argument "should be deemed waived" because "Plaintiff does not present a developed challenge to the ALJ's evaluation of [the nurse practitioner's] opinions." (Doc. 13 at 6.) The court agrees with the Commissioner.

Plaintiff does not adequately challenge the ALJ's persuasiveness finding. He didn't include such an argument in his statement of issues. (Doc. 9 at 1.) *See Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) ("Waiver principles developed in other litigation contexts are equally applicable to social security cases.") (quoting *James v. Chater*, 96 F.3d 1341, 1344 (10th Cir. 1996), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103 (2000)); *Adams Araphoe Joint Sch. Dist. No. 28-J v. Continental Ins. Co.*, 891 F.2d 772, 776 (10th Cir. 1989) ("An issue not included in . . . the statement of issues in the party's initial brief is waived on appeal."); *see also Baca v. Berryhill*, No. 15-938, 2017 WL 3585650, at *14 (D.N.M. Mar. 31, 2017) ("When an appellant does not include an issue in the statement of issues in the party's initial brief, that issue is waived on appeal."). And he made that argument only briefly in a footnote. (Doc. 9 at 12 n.2.) The court "will not consider an argument raised in such a perfunctory manner." *Hill v. Kemp*, 478 F.3d 1236, 1254 (10th Cir. 2007); *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those . . . contentions that have been adequately briefed for our review."). So, the court finds the argument waived.

To sum up, the ALJ had an obligation to "include a narrative discussion describing how the evidence supports" her assessment that Plaintiff would be off task 10% of the time. SSR 96-8p, 1996 WL 374184, at *7; *see Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993) ("The agency's rulings are binding on an ALJ."). That, she did. The ALJ discussed a host of evidence reflecting that Plaintiff experienced moderate functional limitations. The ALJ then acknowledged two competing medical opinions and, without adopting either opinion in full, found a middle-ground time-off-task assessment. Because the court understands that the evidence of moderate functional limitations led the ALJ to this conclusion, the court will affirm her decision.

**IV. Conclusion**

Based on the foregoing, the Commissioner's February 10, 2025, decision is AFFIRMED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

IT IS SO ORDERED. Dated this 6th day of October 2026.

s/ John Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE